

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00496-CV

**IN THE INTEREST OF Z.K.M.W.**, a Child

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-00462
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:      Lori I. Valenzuela, Justice

Sitting:      Patricia O. Alvarez, Justice
       Luz Elena D. Chapa, Justice
       Lori I. Valenzuela, Justice

Delivered and Filed: September 20, 2023

AFFIRMED

A.W. appeals the trial court's order terminating her parental rights to her daughter, Z.K.M.W.[1] On January 19, 2023, the trial court held a bench trial at which one witness testified. Following the proceeding, the trial court signed an Order of Termination terminating A.W.'s parental rights to Z.K.M.W. and naming the Department of Family and Protective Services (the "Department") as permanent managing conservator of the child. We affirm.

### STANDARD OF REVIEW

To terminate parental rights pursuant to Family Code section 161.001, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in

---

[1] To protect the privacy of minor children, we use initials to refer to the children and their biological parents. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2). Z.K.M.W. was born on January 7, 2022.

subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE §§ 161.001(b), 161.206(a). In this case, the trial court found evidence of three predicate grounds to terminate A.W.'s parental rights, specifically section 161.001(b)(1) subsections (N), (O), and (P). The trial court also found termination of her parental rights was in Z.K.M.W.'s best interest. In A.W.'s sole issue on appeal, she contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in Z.K.M.W.'s best interest.

When reviewing the sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (legal sufficiency). The trier of fact is the sole judge of the credibility of witnesses and the weight to be given their testimony. *J.P.B.*, 180 S.W.3d at 573. In a bench trial, such as here, "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citation omitted). We therefore defer to the trial court's judgment regarding credibility determinations. While we must detail the evidence relevant to the issue of parental termination when reversing a finding based upon insufficient evidence, we need not do so when affirming a verdict of termination. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

## BEST INTEREST

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). "[T]he best interest standard does not permit termination [of parental rights] merely because a child might be better off living elsewhere."

*In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) (citation omitted). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE § 263.307(a). The Department has the burden to rebut these presumptions by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfies its burden, the Texas Legislature has provided several statutory factors[2] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[3] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

A best-interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29,

---

[2] The statutory factors include: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[3] The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72.

2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). "A trier of fact may measure a parent's future conduct by [her] past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include drug use, which can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g.*, *In re K.J.G.*, 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

## BACKGROUND

The only witness to testify at trial was the Department caseworker, Diana Salazar. Salazar said she had been the caseworker since the case began in March 2022. On January 10, 2022, three days after Z.K.M.W. was born, the Department received a report stating A.W. had a history with the Department[4] and the hospital was unable to determine if any drugs were involved. Despite numerous attempts by the Department to contact A.W. and establish a safety plan, A.W. refused to cooperate. On March 17, 2022, another referral was received expressing concerns that A.W.

---

[4] This history dated back to 2011 for ongoing domestic violence and substance abuse; her parental rights to two children were terminated in 2013; in 2018, A.W.'s boyfriend was involved in a shooting while A.W.'s children were in his care; and her parental rights to another two children were terminated in 2018 because she did not consent to drug testing and failed to comply with a safety plan.

was leaving Z.K.M.W. in the care of different people[5] up to three weeks at a time. During those three weeks, A.W. would not contact the people with whom she left Z.K.M.W., and she did not provide baby formula, diapers, or clothing. Due to A.W.'s history of drug use, these people believed A.W. took the child to unhealthy environments. The last time A.W. brought Z.K.M.W. to another person, Z.K.M.W. had severe diaper rash and several open wounds.

Z.K.M.W. was bought into the Department's care when she was two and one-half months old. Salazar testified A.W. refused to cooperate during the time the Department was conducting its investigation, A.W. provided no explanation for Z.K.M.W.'s neglected condition, and A.W. had a history of homelessness. Although A.W. gave the Department the name of Z.K.M.W.'s father, the Department could not locate him.

The Department created a service plan for A.W. that required her to obtain stable housing and employment, engage in substance abuse treatment, take random drug tests, address her mental health by completing a psychological evaluation, engage in individual counseling, and complete parenting classes. When Salazar spoke to A.W. about the plan, A.W. accused the Department of kidnapping Z.K.M.W.

On June 16, 2022, A.W. completed a psychological evaluation. It was recommended that she complete a psychiatric evaluation; receive treatment for bipolar disorder and anxiety; and complete a drug and alcohol assessment and parenting and domestic violence classes. While the case was pending, A.W. provided no proof of appropriate or safe housing, financial stability, employment, compliance with a psychiatric evaluation or individual counseling, or that she engaged in a parenting class or drug treatment. A.W. completed one hair follicle test on June 20,

---

[5] Salazar did not identify these people or explain their relationship, if any, to A.W.

2022, which showed a positive result for methamphetamine and cocaine. When confronted with the test result, A.W. denied any drug use and provided no explanation for the positive result.

Salazar testified A.W. was currently a danger to Z.K.M.W., and she did not demonstrate mental or emotional stability. Salazar stated the Department was concerned Z.K.M.W. could be in immediate danger if reunited with A.W. based on A.W.'s continued drug use, unstable living arrangements, and refusal to address her mental health. During the pendency of the case, A.W. had six one-hour visits with Z.K.M.W., but missed thirty-two visits. A.W. had not demonstrated any attachment to the child. Salazar stated A.W. had made no changes that would lead the Department to consider reunification.

Salazar believed termination of parental rights was in Z.K.M.W.'s best interest. She stated A.W. provided her cousin's name to Salazar as a placement. Z.K.M.W. was placed with A.W.'s cousin on July 24, 2022, and the cousin wanted to adopt Z.K.M.W. Salazar said Z.K.M.W. was "doing great" with and bonded to her current caregiver to the extent that when Z.K.M.W. could not see her caregiver, Z.K.M.W. cried and wanted to be held and comforted. The caregiver was meeting all of Z.K.M.W.'s needs and provided appropriate housing for the child. Salazar believed Z.K.M.W. was thriving in her current placement and it would be potentially harmful to the child if she was removed.

Salazar conceded A.W. had, at one time, been employed at a fast-food restaurant, but she did not know whether A.W. was still employed there. A.W. was incarcerated from June 30, 2022 to approximately September 23, 2022, and Salazar did not know whether A.W. attended any substance abuse classes while incarcerated. Salazar stated A.W. was told to communicate with a caseworker via email because she threatened a caseworker and was verbally aggressive. Salazar added that emailing worked well.

Although A.W. did not take the witness stand, she was allowed to address the court and the judge asked her a few questions. A.W. claimed she completed her parenting classes and her substance abuse services in April 2019. Presumably she was referring to the Department's previous case against her on her other children, because—as the trial court noted—the underlying case involving Z.K.M.W. was filed in 2022. A.W. told the judge she completed two drug tests. Salazar told the court A.W. was asked to complete twenty. A.W. explained she was incarcerated for evading arrest, and Salazar said the arrest was for injury to the elderly (A.W.'s mother). When A.W. began to criticize Salazar—calling her "very unprofessional"—the trial court stopped her.

## ANALYSIS

As stated above, a best-interest finding does not require proof of any particular factors and none of the factors we consider are exhaustive. *See G.C.D.*, 2015 WL 1938435, at *5; *J.B.-F.*, 2018 WL 3551208, at *3. "Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest"; *J.B.-F.*, 2018 WL 3551208, at *3; and evidence proving a statutory ground for termination is probative on the issue of best interest. *C.H.*, 89 S.W.3d at 28. "A trier of fact may measure a parent's future conduct by [her] past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *E.D.*, 419 S.W.3d at 620.

One of the grounds on which the court terminated A.W.'s parental rights was her failure to comply with the provisions of a court order that established the actions necessary for her to obtain the return of Z.K.M.W. The evidence shows A.W. failed to comply with the requirements of the family plan that sought to assure Z.K.M.W. would have a safe and stable environment. A.W. did not have a residence of her own and was not employed. The trial court therefore could have reasonably credited this evidence as supporting its best-interest finding. *See In re O.N.H.*, 401

S.W.3d 681, 687 (Tex. App.—San Antonio 2013, no pet.) (noncompliance with service plan is probative of child's best interest).

Of the Family Code statutory factors, the trier of fact could consider that Z.K.M.W.'s age made her vulnerable and that A.W. has a history of substance abuse. *See* TEX. FAM. CODE § 263.307(b); *see In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) (considering parent's substance abuse, failure to provide a stable home, and failure to comply with service plan in holding evidence supported best-interest finding).

The *Holley* factors indicate Z.K.M.W. is too young to express her desires. When a child is too young to express her desires, the factfinder may consider whether the child has bonded with her caregivers, is well-cared for by them, and whether the child has spent minimal time with the parent. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied). At the time of trial, Z.K.M.W. was about one year old and had been with her caregiver for about six months. Salazar testified A.W. visited with Z.K.M.W. six times, but missed thirty-two visits, and had not demonstrated any attachment to the child. Z.K.M.W. was doing well, the current caregiver was meeting her needs, and she anticipated this home to be a long-term placement for Z.K.M.W. if A.W.'s parental rights were terminated.

The evidence of A.W.'s participation in drug counseling was disputed. A.W. claimed she had some drug treatment while incarcerated, but Salazar testified A.W. did not complete her service plan. We defer to the trial court's determinations of credibility. *See J.P.B.*, 180 S.W.3d at 573. The trial court reasonably could have believed Salazar's testimony that A.W. did not or would not complete her drug treatment.

Evidence as to the other *Holley* factors also supports the trial court's best-interest finding. A.W. tested positive for controlled substances and failed to complete drug treatment. Illicit drug use is relevant to multiple *Holley* factors, including a child's emotional and physical needs now

and in the future, the emotional and physical danger to the child now and in the future, A.W.'s parental abilities, the lack of stability of A.W.'s home, and the acts or omissions that may indicate an improper parent-child relationship. *See Holley*, 544 S.W.2d at 371-72. "Additionally, a parent's illegal drug use exposes [a] child to the possibility that the parent may be impaired or imprisoned." *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (explaining drug use implicates multiple *Holley* factors).

A parent's criminal history is also relevant to a best-interest finding. *See re A.M.M.*, 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied) (mem. op.) (considering criminal history in determining whether termination of parental rights was necessary to protect child in the future and was in child's best interest); *In re A. L. T.*, 04-17-00452-CV, 2017 WL 5162173, at *3 (Tex. App.—San Antonio Nov. 8, 2017, pet. denied) (mem. op.) (parent's criminal history and drug use indicated he had not and could not provide for child's physical and emotional needs or provide her with a safe and stable environment). Here, the evidence showed a past history of domestic violence, substance abuse, incarceration, evading arrest, and elder abuse.

Additionally, the trial court could have inferred from A.W.'s past drug use and failure to complete drug treatment and her services that she lacked parental abilities, including the motivation to seek out and utilize available resources. *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [she] does not have the ability to motivate [herself] to seek out available resources needed now or in the future."); *see also* TEX. FAM. CODE § 263.307(b)(10), (11) (providing courts may consider willingness and ability of child's family to seek out, accept, and complete counseling services and

willingness and ability of child's family to effect positive environmental and personal changes within a reasonable period of time).

The trial court also could have reasonably considered the termination of A.W.'s parental rights to four other children, two as recently as 2018, as evidence of A.W.'s inability to parent. *See In re J.M.G.*, 608 S.W.3d 51, 57-58 (Tex. App.—San Antonio 2020, pet. denied) ("The evidence shows Mother has had a long and recent history of abandoning her children and has not been capable of being present in their lives or meeting their basic emotional and physical needs."). The trial court also could have reasonably considered the Department's concerns that A.W. left Z.K.M.W. with other people up to three weeks at a time; she did not provide baby formula, diapers, or clothing for Z.K.M.W.; and the child's severe diaper rash and open wounds when the child was brought back to a caregiver as evidence of A.W.'s inability to parent.

Evidence of A.W.'s instability in employment and housing also supports the best-interest finding. "A child's need for permanence through the establishment of a 'stable, permanent home' has been recognized as the paramount consideration in a best-interest determination." *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Although Salazar conceded A.W. had at one time been employed, the trial court reasonably could have determined that any stability A.W. might achieve was unlikely to last. *Cf. In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) ("[E]vidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of . . . irresponsible choices.").

Viewing all of the evidence in the light most favorable to the best-interest finding and applying the appropriate factors, we conclude the trial court could have formed a firm belief or conviction that termination of A.W.'s parental rights was in Z.K.M.W.'s best interest. We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial

court could not reasonably have formed a firm belief or conviction that termination was in Z.K.M.W.'s best interest. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

## CONCLUSION

We overrule A.W.'s sole issue and affirm the trial court's Order of Termination.

Lori I. Valenzuela, Justice